# United States Court of Appeals
For the Eleventh Circuit

No. 09-11081 -EE

District Court Docket No.
03-02539-CV-T-17-TBM

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Sep 1, 2009
THOMAS K. KAHN
CLERK

HOWARD W. LITTELL,

    Plaintiff-Appellant,

versus

LAW FIRM OF TRINKLE, MOODY, SWANSON,
BYRD AND COLTON,
JOHNNIE B. BYRD, JR., individually,
LAW FIRM OF GRAY, HARRIS, ROBINSON, et al.,

    Defendants-Appellees.

---

Appeal from the United States District Court
for the Middle District of Florida

---

JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

    Entered: September 1, 2009
    For the Court: Thomas K. Kahn, Clerk
    By: Patch, Jeffrey

ISSUED AS MANDATE
OCT 15 2009
U.S. COURT OF APPEALS
ATLANTA, GA

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
                              FILED
                       U.S. COURT OF APPEALS
                         ELEVENTH CIRCUIT
                         SEPTEMBER 1, 2009
                          THOMAS K. KAHN
                              CLERK
```

No. 09-11081
Non-Argument Calendar

D. C. Docket No. 03-02539-CV-T-17-TBM

HOWARD W. LITTELL,

Plaintiff-Appellant,

versus

LAW FIRM OF TRINKLE, MOODY, SWANSON,
BYRD AND COLTON,
JOHNNIE B. BYRD, JR., individually,
LAW FIRM OF GRAY, HARRIS, ROBINSON,
and JANET M. STUART, individually, f/k/a
LANE TROHN, JOHN DOES 1-10,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

(September 1, 2009)

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Howard W. Littell, who alleges he was an intended beneficiary of a trust originally drafted by attorney Johnnie B. Byrd, Jr. ("Byrd") of the Law Firm of Trinkle, Moody, Swanson, Byrd and Colton ("Trinkle Moody") and amended by attorney Janet M. Stuart ("Stuart") of the Law Firm of Gray, Harris, Robinson ("Gray Robinson"), appeals the district court's order dismissing his legal malpractice complaint against Byrd and Stuart and their respective law firms.

The facts of this case, either undisputed or supported by the evidence taken in the light most favorable to Littell, are as follows. In 1992, spouses Kenneth and Betty Herman hired Byrd and Trinkle Moody to create an amendable trust on their behalf, with themselves as settlors and trustees. The Hermans intended for the trust to provide that, after the death of one spouse, the surviving spouse would have unfettered control over the trust assets, including the power to change beneficiaries. Byrd drafted trust documents he believed would carry out the Hermans' intent. On April 17, 1992, the Hermans executed "The Herman Family Revocable Trust Agreement" (the "Trust"). Thereafter, Byrd drafted three amendments to the Trust.

On June 30, 1995, Mr. Herman died. At the time of his death, the Trust

provided that after the death of the last settlor, all assets were to be distributed to Michael L. Dyer and Don I. Dyer. Littell was not named in the original Trust or in any of the amendments prepared by Byrd and Trinkle Moody.

In 1996, Mrs. Herman hired Stuart of Gray Robinson to execute further amendments to the Trust. Between 1996 and 2000, Stuart drafted the fourth, fifth, sixth and seventh amendments to the Trust. In the fourth amendment, Littell was designated as a joint successor trustee. In each successive amendment, Mrs. Herman increased Littell's involvement and share in the Trust, so that, when Mrs. Herman died on August 31, 2001, Littell was the sole trustee, the beneficiary of a yacht, and the residual beneficiary of the Trust assets after dispersing $40,000 in cash gifts and a charitable donation to the University of South Florida.

After Mrs. Herman's death, the previously named beneficiaries of the Trust, the Dyers, brought suit in Florida's probate court, challenging the validity of the amendments made to the Trust following Mr. Herman's death. In a motion for summary judgment, the Dyers argued that the unambiguous terms of the Trust required the approval of both Mr. and Mrs. Herman and that therefore the Trust became irrevocable upon the death of Mr. Herman. The probate court ruled in favor of the Dyers and held that all amendments to the Trust executed solely by Mrs. Herman were invalid. Accordingly, the court ordered that the Trust assets be

distributed to Michael and Don Dyer, as provided by the Trust in effect at the time of Mr. Herman's death.

Littell filed a legal malpractice action against the attorneys and their law firms responsible for drafting the original Trust and the amendments naming him as beneficiary. In brief, Littell's argument is that Byrd was negligent in drafting a trust that failed to allow amendments by the surviving spouse, as was intended by the Hermans, and that Stuart was negligent in failing to counsel Mrs. Herman that the Trust did not allow amendments by the surviving spouse. He argues that the settlors' intent as expressed in the Trust was frustrated by the negligence of these attorneys and as a direct result of such negligence his share in the Trust was lost. In support of his argument, Littell submitted the affidavits of Byrd and Stuart, which they had submitted in opposition to the Dyers' motion for summary judgment in the probate case. In his affidavit, Byrd testified that the Hermans asked him to draft a trust that would give the surviving spouse the power to amend the Trust and that he drafted the Trust to satisfy this request. Stuart, in her affidavit, testified that she believed the original Trust was drafted in a manner that allowed the Trust to be amended by the surviving settlor.

Byrd, Stuart and their respective law firms moved for summary judgment. The district court granted this motion, finding (1) under Florida law, Littell has no

standing to sue Byrd and Trinkle Moody because Littell was not an "intended beneficiary" under any of the documents drafted by Byrd; (2) Stuart and Gray Robinson were not negligent as a matter of law because the unambiguous terms of the original Trust <u>did</u> allow the surviving settlor to make amendments, including changing the beneficiary; and (3) in the alternative, Stuart and Gray Robinson can not be held negligent because they are protected by the doctrine of judgmental immunity. Littell appeals.

We review a district court's grant of summary judgment <u>de novo</u>. <u>Thomas v. Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1363 (11th Cir. 2007). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. <u>Id.</u> "There is no genuine issue of material fact if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." <u>Jones v. Gerwens</u>, 874 F.2d 1534, 1538 (11th Cir. 1989). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996). We can affirm a grant of summary judgment on any basis supported by the record. <u>Lucas v. W.W. Grainger, Inc.</u>, 257 F.3d 1249,

1256 (11th Cir. 2001).

## A. Byrd and Trinkle Moody

Littell asserts that the district court erred in finding that, because Littell was not named in any documents prepared by Byrd, Littell lacks standing as a third-party beneficiary to sue Byrd and Trinkle Moody for malpractice. Littell asserts that the operative document for determining a settlor's intended beneficiary is the final, executed version of the trust in existence at the time of the settlor's death. Littell argues that he was an intended beneficiary under the final version of the Trust and that this intended disposition was frustrated by Byrd's negligent failure to draft a trust which was amendable by the surviving settlor. Accordingly, Littell argues that he has standing to bring a malpractice lawsuit against Byrd and Trinkle Moody as an intended third-party beneficiary of the Trust. To limit standing only to those beneficiaries named in the documents drafted by Byrd, Littell argues, would be illogical because the apparent intent of the settlors was to allow for the beneficiaries to change at any time.

Under Florida law,[1] "[a]n attorney's liability for negligence in the performance of his or her professional duties is limited to clients with whom the

---

[1] As a federal court sitting in diversity, we must apply Florida law to the state-law malpractice claims in this case. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) (noting that federal courts are constitutionally obligated to apply state law to state claims).

6

attorney shares privity of contract." See Espinosa v. Sparber, Shevin, Shapo, Rosen and Heilbronner, 612 So. 2d 1378, 1379 (Fla. 1993) (citing Angel, Cohen and Rogovin v. Oberon Inv., N.V., 512 So. 2d 192 (Fla. 1987)). Florida recognizes a limited exception to this privity requirement in the area of trust and will drafting which applies to those third parties able to demonstrate that the apparent intent of the client in engaging the services of the lawyer was to benefit that third party. Espinosa, 612 So. 2d at 1380; Hare v. Miller, Canfield, Paddock & Stone, 743 So. 2d 551, 553 (Fla. Dist. Ct. App. 1999). Intended third-party beneficiaries of such documents are found to have standing in legal malpractice cases if they are able to show "that the [settlor]'s intent as expressed in the [trust] is frustrated by the negligence of the [settlor]'s attorney." Id. at 1380 (emphasis omitted). "Thus, an attorney may be held liable for breach of his duties to one who engages his services or to one who he knows is the intended beneficiary of his services." Rosenstone v. Satchell, 560 So. 2d 1229, 1229-30 (Fla. Dist. Ct. App. 1990).

Applying this law to the case at hand, we conclude that Littell does not have third-party beneficiary standing to bring a malpractice action against Byrd and Trinkle Moody. Florida's narrowly defined exception to the privity requirement limits an attorney's professional liability to foreseeable plaintiffs, namely, to clients and to those persons that the client apparently intended to be third party

7

beneficiaries of the attorney's services. See Rosenstone, 560 So. 2d at 1230 (limiting privity exception to "one who [the attorney] knows is the intended beneficiary of his services") (emphasis added); Angel, Cohen & Rogovin, 512 So. 2d at 193 (noting that attorney's professional liability is limited to clients and to those who can demonstrate that the apparent intent of the client in engaging the services of the lawyer was to benefit that third-party); see also Machata v. Seidman & Seidman, 644 So. 2d 114 (Fla. Dist. Ct. App. 1994), rev. denied, 654 So. 2d 919 (Fla. 1995) (liability of an accountant for negligence is expanded beyond persons in privity to include those persons the accountant knows intend to rely on the accountant's opinion for a specific purpose). Littell's error is that he conflates the services performed by the two attorneys involved in this case. Although the final amended version of the Trust was relevant to determine the intent of the settlor for probate purposes, these amendments – drafted by Stuart – are irrelevant to the determination of Byrd's professional liability. Rather, for purposes of determining the liability of each individual attorney, we must look at the services provided by Byrd and Stuart separately and consider whether these services, by themselves, give Littell third-party beneficiary standing to pursue a malpractice action against either. In this case, Littell points to no evidence indicating that he was an apparent intended beneficiary of the services Byrd provided to the Hermans or that the

8

Hermans engaged Byrd intending to benefit Littell. At best, Littell was only an incidental third-party beneficiary of Byrd's services and the "Florida courts have refused to expand [the privity] exception to include incidental third-party beneficiaries." Angel, Cohen & Rogovin, 512 So. 2d at 194. Although Stuart knew Littell was a beneficiary of her services, Littell was not an apparent third-party beneficiary of Byrd's services. For this reason, the district court properly found that Littell has no standing to bring a malpractice action against Byrd and Trinkle Moody.

**B.     Stuart and Gray Robinson**

Littell also asserts that the district court erred in finding that the Trust was amendable by the sole surviving settlor and that therefore Stuart and Gray Robinson were not negligent in executing amendments to the Trust.[2] Littell, citing the Florida cases of L'Argent v. Barnett Bank, N.A., 730 So. 2d 395 (Fla. Dist. Ct. App. 1999) and Roberts v. Sarros, 920 So. 2d 193 (Fla. Dist. Ct. App. 2006), asserts that Florida courts would interpret the unambiguous terms of the Trust as providing that an amendment could only be accomplished by both settlors during their lives because

---

[2] Although the probate court reached the opposite conclusion, the district court properly found that because Stuart and Gray Robinson were not parties in the probate case, the probate court's decision has no preclusive effect in this case. See Albrecht v. State, 444 So. 2d 8 (Fla. 1984) (noting that issue preclusion applies only when the identical parties wish to relitigate issues that were actually litigated as necessary and material issues in a prior action).

9

it states that "[d]uring the lifetime of the Settlors" the right to "alter or amend" the Trust is "to be exercised *jointly*." (Emphasis added).

The original Trust contains the following provisions which are relevant to our discussion. Article IV provides that "[d]uring the lifetime of the Settlors the Settlor shall have and possess, and hereby reserves, the following rights and powers, to be exercised jointly, at any time and from time to time without the consent of the Trustee, in writing and effective when delivered to the Trustee hereunder: . . . [t]o revoke this Trust Agreement and Trust established hereunder[;] . . . [t]o alter or amend this Trust Agreement in any and every particular; . . . [t]o change the identity and/or number of the Trustees, Successive Trustees, or Beneficiaries hereunder[;] . . . [t]o reside upon any real property placed in the Trust as their permanent residence during their lives." Article VII provides: "Upon the death of both of the Settlors, the Trust shall become irrevocable and the remaining Trust Estate, including additions made by bequest or devise under Settlor's Last Will and Testaments, shall be held in trust to be administered by the Successor Trustee . . . ." Also, Article XI includes the following provision: "Throughout the Trust Agreement, unless the context requires otherwise, the singular includes the plural, the plural includes the singular, the masculine includes the feminine, and the feminine includes the masculine."

Once created, a valid trust cannot be altered, amended, or revoked except by the exercise of a power identified in the trust. L'Argent, 730 So. 2d at 396 (citing MacFarlane v. First Nat'l Bank, 203 So. 2d 57 (Fla. Dist. Ct. App. 1967)). Accordingly, the issue in this case is whether Article IV, which grants the power to amend or revoke the trust, is exercisable following the death of one of the two settlors. Under Florida law, "[t]he polestar of trust interpretation is the settlors' intent." L'Argent, 730 So. 2d at 397. If the trust language is unambiguous, the settlors' intent as expressed in the trust controls and the court cannot resort to extrinsic evidence. Id.; Ludwig v. AmSouth Bank of Fla., 686 So. 2d 1373, 1376 (Fla. Dist. Ct. App. 1997). In determining the settlors' intent, the court should not "resort to isolated words and phrases"; instead, the court should construe "the instrument as a whole," taking into account the general dispositional scheme. Pounds v. Pounds, 703 So. 2d 487, 488 (Fla. Dist. Ct. App. 1997); see Sarros, 920 So. 2d at 195. Furthermore, "no word or part of an agreement is to be treated as a redundancy or surplusage if any meaning, reasonable and consistent with other parts, can be given to it." Sarros, 920 So. 2d at 196 (citations omitted).

Applying these principles of interpretation, we conclude that the district court correctly found that Article IV, when considered in the context of the entire document, unambiguously expresses the settlors' intent to give the surviving settlor

the power to amend the trust, including changing the beneficiary. Considered alone, Article IV's instruction that "[d]uring the lifetime of the Settlors the Settlor shall have and possess [the power to revoke, alter, change the beneficiaries, and reside in the homestead], to be exercised jointly, at any time and from time to time . . ." is ambiguous. It could be read either as always requiring the joint action of both settlors to exercise the enumerated powers or as only requiring such joint action "during the lifetime" of both settlors, after which the surviving settlor may exercise these powers alone. When considered in conjunction with Article VII and Article XI, however, it becomes clear that the settlors intended the latter interpretation. First, Article VII, which provides that the Trust becomes irrevocable "upon the death of <u>both</u> Settlors", would add nothing to the meaning of the Trust if Article IV were construed as making the Trust irrevocable upon the death of the first settlor. Florida law instructs us to interpret a trust so as to avoid such a surplusage when such an interpretation is reasonable. In addition, Article XI instructs that the singular and plural forms of words be used interchangeably where appropriate. Applying this singular/plural clause in the Trust, we conclude that the provision allowing the "Settlor" to amend from time to time "during the lifetime of the Settlors" can also allow the surviving settlor to exercise these powers. <u>See</u> <u>Sarros</u>, 920 So. 2d at 196 (noting that, when faced with a similar singular/plural

clause, the context does not require that "Grantors" be construed to mean only the plural form of the word unless the Trust states "<u>both</u> Grantors"). As the district court noted, the Trust would not comport with the settlors' dispositional scheme unless the surviving settlor continued to have the power to exercise the rights granted under Article IV. If, as suggested by Littell, the settlors' power to exercise their rights under Article IV was limited to "the lifetime of the <u>Settlors</u>," then the surviving settlor's power to "reside upon any real property placed in the Trust as their permanent residence during their lives" would end upon the death of one settlor. We would therefore have to conclude that the settlors intended to revoke Mrs. Herman's right to live in her home after the death of her husband. Such a result is contrary to the stated purpose of the Trust, which is "to provide for the proper health, maintenance, and support" of the Hermans "during [their] lifetime and during the lifetime of the survivor of them." Accordingly, after considering the Trust instrument as a whole and applying the singular/plural clause to Article IV, we conclude that the settlors intended for the powers granted in Article IV to be exercised jointly while both Mr. and Mrs. Herman were alive, and thereafter by the surviving settlor.

Because we agree with the district court that the Trust documents prepared by Byrd were amendable by Mrs. Herman as the surviving settlor, we conclude that

Stuart and Gray Robinson did not neglect their professional duty by drafting and executing amendments to the Trust after Mr. Herman's death. For this reason, summary judgment in favor of Stuart and Gray Robinson was properly granted.

Littell also disputes the district court's alternative finding that Stuart and Gray Robinson are protected by the doctrine of judgmental immunity. Because we conclude that Stuart and Gray Robinson were not negligent as a matter of law, we need not reach the merits of the district court's alternative holding.

For the reasons as stated herein, the district court's well-reasoned order is AFFIRMED.

14

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia